# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**BARBARA W. BRUCE**                                                **PLAINTIFF**

**VS.**                                                  **CIVIL ACTION NO. 5:18-CV-85-DCB-JCG**

**MISSISSIPPI DIVISION OF MEDICAID;**
**and JOHN DOES (1-10)**                                       **DEFENDANTS**

## MEMORANDUM BRIEF IN SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

The Mississippi Division of Medicaid ("MDOM") by and through counsel, submits its Memorandum of Authorities in Support of its Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, and would show unto the Court as follows:

### *Facts*

Barbara Bruce, an African American, was at all times relevant to this action a Division Director I at the Natchez office of MDOM. This action arises from the Plaintiff having not been selected for a promotion to the position of Bureau Director, Deputy ("BDD") at that office. That position was filled by a Caucasian candidate, Beverly Goodman, in early 2017.

The panel that interviewed candidates and chose the person to fill the position was comprised of three people, Tina Johnson (African American female), Alex Dennery (Caucasian male) and Sarah Underwood (Caucasian female). *Ex, 2, Declaration of Tina Johnson; Ex. 3, Declaration of Alex Dennery.* Alex Dennery was the direct supervisor of both Johnson and Underwood at the time. *Id*. Neither Underwood nor Johnson had

supervisory authority over the other. *Id*. No panel member directed the panel toward or away from any candidate. *Ex. 2; Ex. 3*. There was absolutely no discussion among panel members regarding diversity concerns. *Id*.

It was determined by the interview/selection panel that Bruce lacked certain required behavioral competencies to fill the BDD position. *Ex. 3, Declaration of Alex Dennery*. Certain historical employment issues with Bruce were considered during the promotion process. Specifically, she had been found to have falsified records and to have withheld information from her supervisor in the past. *Ex. 1, Deposition of Sarah Underwood, pp. 50-51; Ex. 8, August 2012 reprimand/suspension*. Sarah Underwood directly supervised the BDD position for which Bruce applied. According to Underwood, "the job requires high integrity. And in that regard, I feel that she did not qualify." *Id., p. 51*. Dennery was aware of Bruce's prior disciplinary action for falsification of records, as well as her being a disruptive presence in the Natchez office. *Ex. 3, Declaration of Johnson*.

During the interview process, Johnson witnessed Bruce eavesdropping on another candidate's interview from the room next door. *Ex. 2, Declaration of Johnson*. This caused Johnson to seriously question Bruce's integrity and trustworthiness, and it affected how she ranked Bruce among the candidates for the position. *Id*. Johnson reported her observations to the other interview panel members. *Ex. 3, Declaration of Dennery*.

Ten candidates were interviewed for the BDD position. *Ex. 2; Ex. 3*. Ultimately, Beverly Goodman was selected for the position. *Ex. 2; Ex. 3*. Ms. Goodman "had many

years of experience supervising a DHS office," and "[s]he had experience with Medicaid eligibility." *Ex. 1, Deposition of Underwood, p. 65*. Jennifer McDonald was named the first alternate for the position. *Ex. 2*. Bruce testified that she would have had no problem had Ms. McDonald been offered the position over her. *Ex. 5, Deposition of Bruce*, pp. 99 - 100. Bruce herself scored sixth among the ten candidates. *Ex. 2; Ex. 3*. The selection of Goodman for the position occurred in January 2017. *Ex. 5, p. 103*.

Bruce filed an internal grievance and an EEOC charge following her not being selected for the position. Some time later, Bruce was reprimanded and suspended for 30 days after she allowed a former DOM employee into the office after hours and provided them access to confidential, HIPAA protected information contained in case files. *Ex. 4*. It was believed that Bruce did this so that the former employee could assist her in catching up on her work. Regardless, it was inappropriate, and the reprimand was due. This had absoultely nothing to do with Bruce's internal grievance or EEOC charge.

### *Summary Judgment Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington*

*v. Armstrong World Indus.*, 839 F. 2d 1121, 1122 (5th Cir. 1988). If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required. *Geiserman v. MacDonald*, 893 F. 2d 787, 793 (5th Cir. 1990). All facts are considered in favor of the non-moving party, including all reasonable inferences from those facts. *Banc One Capital Partners Corp. v. Kneipper*, 67 F. 3d 1187, 1198 (5th Cir. 1995).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F. 3d at 1075.

In the context of Title VII claims, a substantial conflict in evidence must exist to create a jury question on the issue of discrimination or retaliation. *See Rhodes v. Guiberson Oil Tools*, 75 F. 3d 989, 993 (5th Cir. 1996). In a Title VII discrimination or retaliation case, the non-movant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F. 3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994)). A plaintiff can defeat a motion for summary judgment only if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer; and (2) creates a reasonable inference that race was a determinative factor in the actions

of which the plaintiff complains. *Walton v. Bisco Industries, Inc.*, 119 F. 3d 368, 370 (5th Cir. 1997). "Throughout, the ultimate burden of persuasion remains with the plaintiff." *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 875 (M.D. La. 2014) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

*Argument*

## I.    Title VII - Race Discrimination

Title VII, which provides, in pertinent part:

> It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin...

42 U.S.C. §2000e-2(a). Where, as here, the plaintiff presents no direct evidence of race discrimination, she must show such discrimination indirectly, or with circumstantial evidence. *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F. 3d 309, 312 (5th Cir. 1999). In the Fifth Circuit and elsewhere, the analysis requires the three-step burden-shifting approach adopted by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

First, Bruce must establish by a preponderance of the evidence a *prima facie* case of discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). This requires that Bruce show that (1) she is a member of a protected class; (2) she applied for and was qualified for the position he sought; (3) she was not promoted; and

(4) the position was filled by someone not in the protected class. *McFall v. Gonzales*, 143 Fed App'x 604, 607 (5th Cir. 2006) (citations omitted).

Bruce has not met this initial burden with respect to her claim regarding the BDD position being re-advertised after only she and McDonald initially applied. Nobody was selected to fill the position in that instance, so Bruce has not satisfied the fourth prong of the analysis with regard to her *prima facie* burden.

It is conceded that Bruce has met this initial burden with regard to ultimate hiring of Beverly Goodman to the position of BDD. Thus, the burden then shifts to MDOM to provide a legitimate, non-discriminatory reason for not selecting Bruce for the promotion. *McFall*, 143 Fed App'x at 607. In considering this aspect of the analysis, the relevant inquiry is not whether the employer's evaluations were wise or correct, but whether they were honestly held and free from discriminatory bias. *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F. 3d 137, 142 (5th Cir. 1996).

The panel that interviewed candidates and chose the person to fill the BDD position was racially diverse. There was absolutely no discussion among panel members regarding diversity concerns, and race played no part in the promotion decision. It was determined by the interview/selection panel that Bruce lacked certain required behavioral competencies to fill the BDD position. Certain historical employment issues with Bruce were considered during the promotion process. Specifically, she had been found to have falsified records and to have withheld information from her supervisor in the past. During the interview process, one of the interviewers witnessed Bruce eavesdropping on another

candidate's interview from the room next door. This caused the panel to seriously question Bruce's integrity and trustworthiness, and it affected how Bruce was ranked among the candidates for the position.

Ten candidates were interviewed for the BDD position. Ultimately, Beverly Goodman was selected for the position. Jennifer McDonald was named the first alternate for the position. Bruce testified that she would have had no problem had Ms. McDonald been offered the position over her. Bruce scored sixth highest among the ten candidates.

MDOM has provided legitimate, non-discriminatory reasons for the promotion non-promotion of Bruce. *McFall*, 143 Fed App'x at 607. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F. 3d 551, 557 (5th Cir. 2007). Thus, the burden shifts back to Bruce, who must offer evidence sufficient to create a genuine issue of material fact that MDOM's reasons are not true, but are instead a pretext for discrimination. *Price v. Fed. Express Corp.*, 283 F. 3d 715, 719-20 (5th Cir. 2002). Bruce's evidence "must be 'substantial'; otherwise, a jury cannot reasonably infer discriminatory intent." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F. 3d 309, 312 (5th Cir. 1999); *accord Landry v. Zerangue*, 54 Fed. Appx. 405, 2002 WL 31688813, at *3 (5th Cir. Oct. 28, 2002).

Bruce simply cannot meet this substantial burden. Bruce has asserted that she is more qualified than the chosen candidate. [1], p. 5. This assertion is premised on Bruce's contention that Goodman did not meet the minimum qualifications for the position. *Id*.

The determination regarding which candidates met the minimum qualifications for the BDD position was made by the Mississippi State Personnel Board ("MSPB"), not MDOM. *Ex. 6, Deposition of Janie Simpson, pp. 11-13*. MDOM is provided with a list of eligible candidates by MSPB. *Id., pp. 61-62*. Beverly Goodman was approved by MSPB for a substitution of experience for education. *Id., pp. 128-130*. MDOM had no part in this decision-making process.

Disagreements over which applicant is more qualified are employment decisions not meant for a court to second guess. *See Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988). An employer is free to determine which type of experience is more relevant to an open position. *See E.E.O.C. v. Louisiana Office of Community Services*, 47 F. 3d 1438, 1445-46 (5th Cir. 1995). "Ultimately, the law requires only that the employer's decision is 'somewhere within the realm of reason.' This is because the judicial system is not as well suited to evaluate professional qualifications as those who have trained and worked for years in the relevant field of endeavor." *Manora v. Donahoe*, 439 F. App'x 353, 357 (5th Cir. 2011) (citations omitted). The Fifth Circuit has warned courts not to substitute their "judgment for the employer in evaluating what types of experience are most valuable for an employee in [a] position in the absence of proof that the standards were not consistently applied or were so irrational or idiosyncratic as to suggest a cover-up." *EEOC v. Louisiana Office of Community Services, supra* at 1445-46.

In order to meet her high burden, Bruce must establish with actual evidence that "[she] was 'clearly better qualified' than" the chosen candidate. *Celestine v. Pretoleos de Venezuella SA*, 266 F. 3d 343, 356-57 (5th Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (citations omitted). But, "differences in qualifications are generally not probative evidence of discrimination unless those disparities are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Dulin v. Bd. Of Comm'rs.*, 2011 WL 2654738 at *6 (5th Cir. July 8, 2011) (internal quotations omitted).

Ultimately, the relevant inquiry is not whether the employer's evaluations were wise or correct, but whether they were honestly held and free from discriminatory bias. *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F. 3d 137, 142 (5th Cir. 1996). There is absolutely no summary judgment evidence to indicate the contrary in this matter. Rather, Bruce offers only her own subjective belief that she was subjected to discrimination, which is not sufficient to serve as the basis for judicial relief under Title VII. *Little v. Republic Refining Company*, 924 F. 2d 93, 96 (5th Cir. 1991); *Sherrod v. Sears, Roebuck & Company*, 785 F.2d 1312, 1316 (5th Cir. 1986); *Hornsby v. Conoco, Inc.*, 777 F. 2d 243, 246 (5th Cir. 1985); *Elliot Group Medical & Surgical Services*, 714 F. 2d 556, 567 (5th Cir. 1983); cert. denied, 467 U.S. 1215 (1984). Bruce's claim of racial discrimination must fail as a matter of law.

Bruce also seeks punitive damages on her Title VII claim. [1], ¶25. Such damages are not available against governmental entities in Title VII cases. *Oden v. Oktibbeha County, Miss.*, 246 F. 3d 458, 465-66 (5th Cir. 2001); *Newport v. Facts Concerts, Inc.* 453 U.S. 247, 263 (1981). Indeed, the federal statute applicable to punitive damages for intentional discrimination in employment specifically exempts government agencies such as MDOM:

> A complaining party may recover punitive damages under this section against a respondent (**other than a government, government agency or political division**) if the complaining party demonstrates that the respondent engaged in discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. §1981a(b)(1) (emphasis added). Further, the State of Mississippi has unequivocally maintained its sovereign immunity as to punitive damages. Miss. Code Ann. §11-46-15(2). For these reasons, Bruce's claim for punitive damages is also due to be dismissed.

## II. *"Section 1981 Race Discrimination - Under 42 U.S.C. §1983"*

It is next asserted by Bruce that MDOM discriminated against her based upon her race in violation of 42 U.S.C. §1981. [1], ¶27. Bruce thus seeks relief against MDOM pursuant to 42 U.S.C. §1983. [1], ¶29.

Section 1983 authorizes suits for damages against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws." 42 U.S.C. §1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Additionally, state agencies are not persons for the purpose of § 1983. *Cronen v. Tex. Dep't of Human Servs.*, 977 F. 2d 934, 936 (5th Cir. 1992). MDOM is a state agency and is not a "person" under § 1983. *Mid-Delta Home Health, Inc. v. Mississippi Div. of Medicaid*, 2000 WL 870802, at *2 (N.D. Miss. 2000). Thus, Bruce has no cognizable cause of action against MDOM under §1983.

Likewise, §1981 offers no avenue for relief against MDOM. §1981 does not provide for a cause of action against state actors separate from §1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (holding that "the express 'action at law' provided by §1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by §1981 when the claim is pressed against a state actor"); *Felton v. Polles*, 315 F. 3d 470, 482 (5th Cir. 2002) (holding that under *Jett*, "a claim for damages against a state actor for violation of rights contained in §1981 must be redressed pursuant to the explicit remedial provisions of §1983.") (internal quotation marks and citation omitted).

Furthermore, Bruce's claims against MDOM pursuant to §1981 and/or §1983 would be barred by the doctrine of sovereign immunity. The principle of sovereign immunity is reflected in the Eleventh Amendment, which precludes suits brought by

private citizens against states in federal courts unless the State has waived its immunity. U.S. Const. Amend XI; *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). As Bruce notes in her complaint, MDOM is an agency of the State of Mississippi. [1], ¶2. Mississippi has not waived its right to sovereign immunity. See Miss. Code Ann. §11-46-5(4) (1992) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"). A state may waive its right to sovereign immunity only by "using the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Sherwinski v. Peterson*, 98 F. 3d 849, 852 (5th Cir.1996).

Bruce is not entitled to any relief against MDOM under either §1981 or §1983.

### III. *Negligence and other State Law Tort Claims*

Bruce has asserted state law claims for negligence and infliction of emotional distress. All of Bruce's state law claims are subject to the provisions of the Mississippi Tort Claims Act. Miss. Code Ann. §11-46-11 (as amended). In order to proceed under state law in a civil action against the State of Mississippi or a political subdivision thereof, such as Medicaid, a notice of claim must be provided within one year of the alleged tortious acts. §11-46-11 of the Miss. Code Ann. (as amended). Here, the conduct complained of occurred in January 2017, when Goodman was selected for the position that Bruce sought. *Ex. 5, p. 103*. Bruce did not submit a notice of claim to MDOM as required by the Act. *Ex. 7, Declaration of Patrick Black*. Nor did she file suit within one

year of the occurrence giving rise to her claim. Miss. Code Ann. §11-46-11(3).[1] Bruce's complaint was filed beyond the statute of limitations for any tort action against MDOM, and it is therefore time-barred. *Jackson v. City of Booneville*, 738 So. 2d 1241 (Miss.1999). *See also Black v. Ansah*, 876 So. 2d 395, 396 (Miss. Ct. App. 2010). Because the Complaint was not filed within the applicable limitations period, Bruce's state law claims are barred.

Even if Bruce's state law claims were not time-barred, the State is nevertheless immune from those claims. The Mississippi Tort Claims Act, §11-46-1, *et seq*. of the Miss. Code of 1972, as amended, "provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit" pursuant to state law. *City of Jackson v. Sutton*, 797 So.2d 977, 981 (Miss.2001). Bruce's state law claims are subject to dismissal based upon immunity under the Act. Section 11-46-9(1)(d) specifically provides exemption from liability for a governmental entity "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." *Id*. The Mississippi Supreme Court has held that employment decisions are discretionary. *See Levens v. Campbell*, 733, So. 2d 753, 763-64 (Miss.1999). *See also Suddith v. University of Southern Mississippi*, 977 So. 2d 1158 (Miss. Ct. App. 2007), and *City of Jackson v. Powell*, 917 So. 2d 59 (Miss.2005). MDOM

---

[1]To the extent that Bruce is asserting any claim under state law regarding the reprimand/suspension that she received in December 2017, she never served a notice of claim upon MDOM for those claims, either. *Ex. 7, Declaration of Patrick Black*.

is entitled to protection under §11-46-98(1)(d).

Lastly, the MTCA does not waive Eleventh Amendment sovereign immunity from suit in federal court. Miss. Code § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Black v. N. Panola Sch. Dist.*, 461 F. 3d 584, 594 (5th Cir. 2006) ("The MTCA also preserves all immunities granted by the Eleventh Amendment of the United States Constitution."). Bruce's state law claims against MDOM are also barred by the State's Eleventh Amendment immunity.

All of Bruce's state law claims are due to be dismissed.

### IV.    Retaliation

Although it is not specifically pled as a cause of action in her complaint, Bruce asserts factual allegations that MDOM retaliated against her after she filed her charge of discrimination with the EEOC. Specifically, Bruce asserts that the reprimand/suspension that she received in December 2017 was issued in retaliation for her filing her charge of discrimination against MDOM. *Ex. 5, Deposition of Bruce, p. 86*.

"In the Fifth Circuit a *prima facie* case of retaliation requires that a plaintiff must show that '(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action.' " *Malin v. Orleans Par. Commc'ns Dist.*, 2017 WL 2425625, at *3 (E.D. La. June 5, 2017) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F. 3d 321, 331 (5th Cir. 2009).

MDOM does not dispute that Bruce has met her initial burden regarding numbers (1) and (2) above. She filed an EEOC charge alleging racial discrimination, and she was subsequently reprimanded and suspended for thirty (30) days. However, Bruce cannot meet the third requirement by demonstrating a causal connection between those occurrences. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 882 (M.D. La. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2521, 186 L. Ed. 2d 503 (2013)). The legitimate, non-retaliatory reason for the reprimand/suspension is set forth in detail above and in Exhibit 4.

Bruce only offers her own subjective belief that retaliation occurred. This is simply insufficient to defeat summary judgment. The Fifth Circuit has stated that this part of the analysis requires a plaintiff to bring forth more than a "subjective belief of retaliation, which we have repeatedly held is insufficient to warrant relief." *Hernandez v. Metropolitan Transit Authority of Harris County*, 673 Fed. Appx. 414 (5th Cir. 2016) (citing *Aryain v. Wal–Mart Stores Tex. LP*, 534 F. 3d 473, 487 (5th Cir. 2008).

"Close timing between an employee's protected activity and an adverse action against [the employee] may provide the causal connection required to make out a prima facie case of retaliation." *Evans v. City of Houston*, 246 F. 3d 344, 354 (5th Cir. 2001) (citation and quotation marks omitted). "A plaintiff can satisfy h[er] *prima facie* burden solely on the basis of timing by showing an interval between the protected activity and the

adverse action from as little as five days, *id.*, to as long as two and a half months, *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007); an interval of four months, however, is too long. *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 922 (5th Cir. 2015); *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 (5th Cir. 2011)." *Shiyan Jiang v. Texas Comm'n on Envtl. Quality*, 321 F. Supp. 3d 738, 748 (W.D. Tex. 2018). Bruce filed her charge of discrimination with the EEOC on February 13, 2017. *Ex. 9*. She was not reprimanded and suspended until December 21, 2017, more than ten (10) months later. *Ex. 4*. Admittedly, a notice of potential disciplinary action was issued to Bruce on August 24, 2017. Still, this was more than six (6) months after Bruce filed her EEOC charge. There is insufficient temporal proximity here to aid Bruce in her effort to establish a causal connection.

Furthermore, the discipline rendered to Bruce was consistent with what she had received in the past for infractions. *Ex. 4; Ex. 8*. Bruce cannot establish a causal connection between the filing of her EEOC charge and the discipline rendered against her by MDOM. Therefore, Bruce's claim for retaliation must also fail as a matter of law.

### *Conclusion*

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion for Summary Judgment.

Respectfully submitted this the 11th day of July, 2019.

**MISSISSIPPI DIVISION OF MEDICAID, DEFENDANT**

**JIM HOOD, ATTORNEY GENERAL STATE OF MISSISSIPPI**

BY: BENNY M. MAY, MSB NO. 100108
Office of the Attorney General
Civil Litigation Division
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
e-mail: bemay@ago.state.ms.us